UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| KEVIN LEE KENNEDY, | Case No. 3:18-cv-00161-RCJ-CBC |
|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| v. | |
| SCOTT HENROID, *et al.*, | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Robert Clive Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Kevin Lee Kennedy ("Plaintiff"), a prisoner in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a first amended civil rights complaint ("FAC") under 42 U.S.C. § 1983 and has filed an inmate application to proceed *in forma pauperis*. (ECF No. 1.) The events giving rise to this action, however, involve Plaintiff's arrest and pretrial detention at White Pine County Jail ("WPCJ"). The court will now address the application to proceed *in forma pauperis* and screen Plaintiff's FAC under 28 U.S.C. § 1915A.

I. **IN FORMA PAUPERIS APPLICATION**

Before the Court is Plaintiff's application to proceed *in forma pauperis*. (ECF No. 1.) Based on the information regarding Plaintiff's financial status, the court finds that Plaintiff is not able to pay an initial installment payment toward the full filing fee under 28 U.S.C. § 1915. However, Plaintiff will be required to make monthly payments toward the full $350.00 filing fee when he has funds available.

II. **SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a

governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th

1  Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than
2  formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While
3  the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff
4  must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550
5  U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is
6  insufficient. *Id.*

7  Additionally, a reviewing court should "begin by identifying pleadings [allegations]
8  that, because they are no more than mere conclusions, are not entitled to the assumption
9  of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide
10 the framework of a complaint, they must be supported with factual allegations." *Id.* "When
11 there are well-pleaded factual allegations, a court should assume their veracity and then
12 determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining
13 whether a complaint states a plausible claim for relief . . . [is] a context-specific task that
14 requires the reviewing court to draw on its judicial experience and common sense." *Id.*

15 Finally, all or part of a complaint filed by a prisoner may therefore be dismissed
16 *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This
17 includes claims based on legal conclusions that are untenable (e.g., claims against
18 defendants who are immune from suit or claims of infringement of a legal interest which
19 clearly does not exist), as well as claims based on fanciful factual allegations (e.g.,
20 fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989);
21 *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

22 **III.    SCREENING**

23 In the complaint, Plaintiff brings civil rights claims against, White Pine County
24 Sheriff Scott Henroid ("Scott Henroid"), White Pine County Sheriff Captain Jamie Swetich
25 ('Jamie Swetich"), White Pine County Sergeant Luke Shady ('Luke Shady"), White Pine
26 County Deputy Sheriff Caleb Sumrall ("Caleb Sumrall"), Nurse Brandi Sumrall ("Brandi
27 Sumrall"), White Pine County's Retired Sheriff Dan Watts ("Dan Watts"), White Pine
28 County Sergeant Mingo ("Mingo"), White Pine County Deputy Watson ("Watson"), White

1  Pine County Sheriff's Department Jailor Terrance Deeds ("Terrance Deeds"), White Pine
2  County Sheriff's Department Jailor Shannon Casarez ("Shannon Casarez") White Pine
3  County Deputy Sheriff Anthony Sifre ("Anthony Sifre"), White Pine County Deputy Sheriff
4  Andy Overson ("Andy Overson"), and White Pine County Lieutenant Sawyer ("Sawyer").
5  (ECF No. 1-1 at 2-5.) Plaintiff alleges three counts and seeks monetary damages as well
6  as injunctive and declaratory relief. (*Id.* at 3-27.)

7  **A. Counts I and III**

8  As a general matter, "duplicative litigation of virtually identical causes of action is
9  subject to dismissal under 28 U.S.C. § 1915 as malicious." *See* U.S.C. § 1915; *see also*
10  *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995) (citing *Bailey v. Jonson*,
11  846 F.2d 1019, 2021 (5th Cir. 1988) (holding that repetitious litigation of virtually identical
12  causes of action is subject to dismissal as malicious)); *Hernandez v. Denton*, 861 F.2d
13  1421, 1426 (9th Cir. 1988). "Dismissal of the duplicative lawsuit, more so than the
14  issuance of a stay or the enjoinment of proceedings, promotes judicial economy and the
15  comprehensive disposition of litigation." *Adams v. California*, 487 F.3d 684, 692-93 (9th
16  Cir. 2007). Plaintiff has now filed two iterations of these counts. *See Kennedy v. Watts*,
17  Case No. 3:17-cv-00468-MMD-WGC. Counts II and III in Case # 3:17-cv-00468-MMD-
18  WGC involve the same allegations as Counts I and III in the instant case. As such, the
19  court recommends that these claims be dismissed as malicious with prejudice.

20  **B. Count II**

21  Plaintiff alleges that Defendant Watson told him that other officers had watched the
22  body camera footage from Plaintiff's arrest for "entertainment purposes." (ECF No. 1-1
23  at 12.) He claims that when he approached Defendant Shannon Casarez about this, she
24  told Plaintiff that this is a common practice amongst officers. (*Id.*) Plaintiff then goes on
25  to assert that he and his attorney at the time did not view the footage until months later
26  and that the video "goes [sic] blank at three different areas which happen to be exact
27  points that would be directly related to the crimes [Plaintiff] is charged with." (*Id.* at 13.)
28  Plaintiff claims the video shows his vehicle being parked somewhere other than where

the officers had testified to at Plaintiff's trial. (*Id.* at 12-15.) Plaintiff raised these concerns with Defendants Dan Watts, Sawyer, and Mingo, who told Plaintiff those were the old models of body cameras, that they were disfunctioning, and that the concerns regarding other officers viewing the footage would be looked into. (*Id.*) Plaintiff asserts that the Defendants tampered with the body camera footage, conspiring to erase the video, and subsequently perjured themselves on the stand at his trial in regards to the footage. (*Id.*) Finally, Plaintiff asserts that Defendants Henroid, Sawyer, Mingo, and Watson all had knowledge to this affect. (*Id.*)

The Crux of Count II is that the Defendants violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure and his Fourteenth Amendment rights to due process and equal protection when they tampered with the body camera footage and lied in court about the footage which led to Plaintiff's underlying conviction. (*Id.*) For the reasons set forth below, the court finds that it would be impossible to proceed on Count II due to Plaintiff's criminal conviction.

In *Heck v. Humphrey*, the United States Supreme Court held that "to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477 (1994). "Absent an intervening decision that renders a conviction ineffectual, *Heck* requires courts to dismiss a § 1983 action if "a judgment in favor of the plaintiff would *necessarily imply* the invalidity of his conviction or sentence." *Id.* (emphasis added). *Heck* provides a specific example of this type of situation—a plaintiff who is convicted of resisting arrest when the police officer is making an arrest. 512 U.S. at 487 n.6. The legality of the body camera footage and the subsequent testimony of the officers involved in the incident is central to both the federal civil rights suit and state criminal prosecution so that a federal court's ruling in Plaintiff's

favor would necessarily invalidate the state criminal conviction.

The Court takes judicial notice that Plaintiff was convicted by jury trial in the Seventh Judicial District Court of Nevada, on charges of: battery causing substantial bodily harm, in violation of NRS 200.481(2)(B); prohibited person in possession of a firearm, in violation of NRS 202.360; eluding a police officer, in violation of NRS 484B.550; escape, a violation of NRS 212.090(1)(B); and battery by a prisoner, in violation of NRS 200.481(2)(F). *The State of Nevada v. Kevin Lee Kennedy*, Case No. CR-1703024. Judgement of conviction and sentence were entered on July 17, 2018. Plaintiff's convictions are matters properly subject to judicial notice.[1]

Plaintiff is clearly attempting to challenge issues that relate to his criminal conviction and he is seeking damages. (ECF No. 1-1 at 12-15, 27.) Success on Plaintiff's claims would certainly undermine the validity of Plaintiff's arrest and conviction because he alleges that the video camera footage is false, as was the Defendants' testimony. (*Id.* at 12-15.) Because such a finding would necessarily undermine the validity of Plaintiff's criminal judgment, the claim is barred by *Heck*. *See, e.g., Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998).

*Heck* bar encompasses Plaintiff's claims for injunctive and declaratory relief as well as his claims for damages. *See Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (noting that *Heck* bar applies to requests for equitable relief if success would necessarily imply invalidity of conviction); *Edwards v. Balisok*, 520 U.S. 641, 648 (2005) (applying *Heck* bar to action seeking damages and declaratory relief). If Plaintiff seeks to challenge the validity of his conviction, he must seek federal habeas corpus relief or the appropriate state relief. *See Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (reiterating that the Supreme Court has "long held that habeas is the exclusive vehicle for claims brought by

---

[1] While a plaintiff's well-pleaded factual allegations are taken as true, the court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

state prisoners that fall within the core of habeas, and such claims may not be brought in a § 1983 action").

Because Plaintiff has not alleged that his conviction and sentence have been overturned and success here would necessarily impugn Plaintiff's conviction, the court recommends Count II be dismissed without prejudice but without leave to amend at this time.

**C.  Count IV**

Plaintiff alleges that as a result of his numerous complaints Defendants Watts, Sawyer, Mingo, and Shannon Casarez, have retaliated against him in violation of his First Amendment rights, by ordering lock downs on football Sundays because they know Plaintiff loves football.  (ECF No. 1-1 at 20-24.)  He further alleges that on one of these incidents he was deprived of his First Amendment rights to freedom of speech and expression, when Defendant Casarez ordered Plaintiff to comply with the lock down and he told responding officers that they, "better not try anything because [he] will protect [himself] by any means possible."  (*Id.* at 20-21.)  This incident resulted in a misdemeanor charge against Plaintiff that he claims violated his Fourteenth Amendment rights to due process and equal protection because he was "demonstrat[ing] [his] right to free speech and protest. . ."  (*Id.*)

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner with the legitimate penological objectives of the corrections system."  *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against and inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  Retaliation claims must be evaluated in light of the deference accorded to prison officials.  *Id.* at 807.  The inmate bears the burden of pleading and proving the

absence of legitimate correctional goals for the alleged retaliatory action. *Id.* at 806; *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003).

Plaintiff asserts that the Defendants had no issue with him until after he filed numerous complaints and that directly after filing the complaints they began to engage him less. (*Id.*) He claims that the prison lock downs are directed at him specifically because four of the lock downs were on consecutive Sundays and Defendants know he loves football. (ECF No. 1-1 at 20-24.) Furthermore, he asserts that his refusal to comply with a particular lock down and statement regarding how he would protect himself from being forced to comply, violate his First Amendment Rights to freedom of speech and expression. In both instances, the lock downs and the statement, Plaintiff has failed to assert facts that show that these incidents were not in furtherance of a legitimate penological interest as required by *Rhodes*. As to the lock downs, lock downs apply generally to the prison not just to an individual inmate and Plaintiff has not asserted that there was no penological interest for the lock down in the prison. As to the statement, Plaintiff's assertions actually supply a valid penological interest in the Defendants charging him with a misdemeanor for threatening an officer. (*Id.*) The court therefore recommends Count IV be dismissed without prejudice.

The parties are advised:

1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's application to proceed *in forma pauperis* (ECF No. 1) without having to prepay the full filing fee is **granted**. Plaintiff will not be required to pay an initial installment fee. Nevertheless, the full filing fee will still be due, under 28 U.S.C. § 1915, as amended by the Prisoner Litigation Reform Act. The movant herein is permitted to maintain this action to conclusion without necessity of prepayment of fees or costs or the giving of security therefor. This order granting *in forma pauperis* status will not extend to the issuance and/or service of subpoenas at government expense.

**IT IS FURTHER ORDERED** that, under 28 U.S.C. § 1915 (b)(2), the Nevada Department of Corrections must pay to the Clerk of the United States District Court, District of Nevada, 20% of the proceeding month's deposit to the account of Kevin Lee Kennedy, #79138 (in months that the account exceeds $10.00) until the full $350.00 filing fee has been paid for this action. The Clerk will send a copy of this order to the Chief of Inmate Services for the Nevada Department of Corrections, P.O. Box 7011, Carson City, NV 89702.

**IT IS FURTHER ORDERED** that, even if this action is dismissed, or is otherwise unsuccessful, the full filing fee will still be due, under 28 U.S.C. §1915, as amended by the Prisoner Litigation Reform Act.

**IT IS FURTHER RECOMMENDED** that Counts I and III be **dismissed as malicious with prejudice**.

**IT IS FURTHER RECOMMENDED** that Count II be **dismissed without prejudice but without leave to amend at this time**.

**IT IS FURTHER RECOMMENDED** that Count IV be **dismissed without prejudice**.

**IT IS FURTHER RECOMMENDED** that Plaintiff shall **thirty days (30)** to file an amended complaint to the extent Plaintiff can assert facts that address the defects of the

complaint. Failure to file a timely amended complaint will result in a recommendation that this case be dismissed in its entirety.

**IT IS FURTHER RECOMMENDED** that the Clerk of the Court shall send to Plaintiff the approved form for filing a § 1983 complaint and instructions for the same. If Plaintiff chooses to file a first amended complaint, he must use the approved form and he shall write the words "First Amended" above the words "Civil Rights Complaint" in the caption.

DATED THIS 21st day of November 2018.

_____
UNITED STATES MAGISTRATE JUDGE